

**FILED**

JUL 2 8 2017

CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION
RAPID CITY

~~Rudy "Butch" Stanko, individually, and on behalf of similarly situated cattle~~
ranchers on the Pine Ridge Reservation and border towns,

        Plaintiff,

vs.                                   Case No 17 - 5060

South Dakota State Brand Board,
South Dakota State Brand Inspector Jake Schofield, individually and in his official
capacity as a brand inspector;
Philip Livestock Auction;
Thor Roseth, individually and as owner of the Philip Livestock Auction;
Defendants 1x through 4x, will be named after discovery,
        Defendants.

**COMPLAINT WITH REQUEST FOR A 7th AMENDMENT COMMON
LAW[1] TRIAL BY JURY and PETITION FOR A DECLARATORY
JUDGMENT with APPLICATION FOR PRELIMINARY AND
PERMANENT INJUNCTIVE RELIEF**

    This is a common law complaint and a complaint pursuant to the various

statutes in the US Code Title 42 USC and South Dakota Code. This is also a

Bivens complaint, See <u>Bivens v Six Unknown Narcotic Agents</u>. The value of the

controversy is in excess of twenty dollars as required and stated by the common

law in the Bill of Rights number seven (7) and the South Dakota Constitution. The

Plaintiff is requesting a jury to award compensatory and punitive damages and

---

[1] **Common Law:** "As distinguished from statutory law created by enactment of legislatures....As
a compound adjective "common law" is understood as contrasted or opposed to "statutory," "equitable
or to criminal." <u>Black's Law Dictionary</u>, 6th Ed. 1990. "That system of law which does not rest for its
authority upon any express statutes." <u>Gilmer's Law Dictionary</u>, Anderson Pub. Co., 1986, 6[th] Ed.

other costs, fees, and expenses incurred by the Plaintiff. The Plaintiff is seeking a common law jury trial pursuant to the 7th Amendment requesting the jurors, and not the judge, to decide the compensatory, punitive, and exemplary damages. The Plaintiff is suing each individual defendants in their individual capacity, and the amount of the controversy in this cause is in excess of $100,000.

In addition the Petitioner, petitions the Court for a declaratory judgment to Declare that his Constitutional rights to private property and the taking of his private property without due process and just compensation has been violated by the Defendants. The Petitioner seeks a declaratory judgment pursuant to title 28, chapter 8, sec. 2201 & 2202, and rule 57, and injunctive relief pursuant to rule 65.

## JURISDICTION

**COMMON LAW:**

1.   Article III, § 2 of the United States Constitution: "The judicial Power shall extend to all Cases, In (common) Law. . . ."; [2]

2.   7th Amendment;

3.   Article IV, § 6 of the South Dakota Constitution: The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy, . . . ."

4.   This court has jurisdiction for constitutional violations. "As it (the substantiality doctrine) relates to original subject matter jurisdiction of federal courts, the substantiality doctrine requires that federal district court entertain a

---

[2]   "By common law they meant, what the constitution denominated in the third Article 'law' . . . ." Colgrove v Battin, 413 US 148, 37 L Ed 2d 522, 93 S Ct 2448 (1973). "The constitution declared in the third article (Art. III, § 2), that the judicial power shall extend to all cases in Law . . . ." 37 L Ed 2d 522, 528 n. 9.

complaint seeking recovery under the Constitution or laws of the United States,

. . . ." <u>Bell v Hood</u>, 327 US 678, 681-82, 66 S.Ct. 773, 775-76, 90 L.Ed 939

(1946).

5.    This court has jurisdiction pursuant for violation of Article IV, Privileges
and Immunities Clause, of the Federal Constitution, which states: "The citizens
of each State shall be entitled to all Privileges and Immunities of Citizens of the
several States."  This applies when a Pine Ridge Reservation resident or a
border town rancher is treated different that a South Dakota citizen rancher in
the State of South Dakota for bringing cattle to Philip Livestock Auction to sell.

6.    Jurisdiction is found on the existence of the following laws of the United
States and South Dakota by their respective Constitutions, violations of the 4th
Article of the Bill of Rights, and the due process and taking clauses of the 5th
Article of the Bill of Rights, i.e., as stated in the Federal Constitution and
South Dakota Constitution.   South Dakota has held its Constitution affords
greater protection than does the Federal Constitution, while the Federal
Constitution is the supreme law of the land.

**EQUITY:**

7.  This Court has subject matter jurisdiction over this action pursuant to 28 USC §
1331 as involving questions and controversies arising under the Constitution,
Federal laws, and regulations;

8.  This Court has personal jurisdiction over this action pursuant to 28 USC §
1343;

9.  This Court has jurisdiction under the Federal Tort Claims Act (28 USC §§ 1346
and 2671-2680).

10. This Court has subject matter jurisdiction over this action pursuant to 42 USC
1981 through 1985.

11.   This Court has subject matter and personal jurisdiction pursuant to the laws of the United States and South Dakota for common law tort claim(s) against the confiscation and/or theft of $59,420.36 by a State employee and/or organization and in a conspiracy with a private individual (Thor Roseth) and/or Philip Livestock Auction (Corporation) without Due Process and the intentional infliction of emotional distress by the taking of this seven (7) figure money.

12.   This Court has equitable jurisdiction to issue a declaratory judgment on the issued presented pursuant to the Declaratory Judgment Act, 28 USC §§ 2201 & 2202, and common law jurisdiction pursuant to the Petitioners' Constitutional right to petition the government for a redress of grievance pursuant to the First Amendment.

The Petitioners petition to declare the laws, rules, and/or policies of the South Dakota Livestock Board as being unconstitutional, when they give a livestock sale barn owner a piece of paper as a forgery of an official warrant under oath, which has to be verified by a judicial official, which it is not. Also declare, there is no due process, when they just take the money of a livestock producer.

### VENUE

13.   Venue is proper in this district pursuant to 18 USC § 2334 and diversity of citizenship.

14.   This Court has personal jurisdiction over this action pursuant to 28 USC § 1343.

### PARTIES

15.    Plaintiff, Rudy Stanko, is a resident of the Pine Ridge Reservation at 485

Country Road 17, Denby, South Dakota  57716, aka, HC 64, Box 46A,

Batesland,  SD  57716

16.    Defendant South Dakota State Brand Board office is located at 209 W

Dakota Ave., Pierre, South Dakota  57501.  Telephone number 605-773-3324

17.  Defendant Jake Schofield is a State Brand Inspector and can be located at

either his residence 22800   228th Ave., Philip, South Dakota or Philip

Livestock, Philip, South Dakota  57567.

18.  Philip Livestock Auction is at 607 Pleasant Street, Philip, South Dakota

57567.

19.  Defendant Thor Roseth can be located at his residence 615 N Wood Ave., or

Philip Livestock, Philip, South Dakota  57567.

20.  The addresses of Defendants 1X through 4X are supervisors of Jake Schofield

and will be named or excluded from the complaint once pretrial discovery is

completed.  The depositions of Jake Schofield and/or Thor Roseth may

conclude that they did not act alone in the theft and illegal taking of the

Plaintiff's property, and the other constitutional violations named by the

Plaintiff.

### F A C T S

21.  The Plaintiff is a large cattle feeder and rancher on the Pine Ridge
     Reservation and the border town of Gordon, Nebraska.

22.  The Plaintiff owns and uses the brand referred to as Bar Mill Iron on the Left
     Shoulder, Ribs, Hip of his cattle.

23.  The Plaintiff buys and sells as many critters as anyone from Crawford,
     Nebraska to Philip, South Dakota.

24.  The Plaintiff bought and sold $10,000,000 worth of cattle in 2016.

25.  The Plaintiff has been in the business for over 50 years and is not a rustler.

26.  The border towns of Nebraska and South Dakota have reciprocal agreements
     with the Nebraska and South Dakota State Brand Inspectors to exchange
     services where by only one brand inspection charge is billed by the receiving
     State.  See SD 40-18-10.1.

27.  The Plaintiff paid for brand inspection of $47.00 ($1 per head) subtracted
     from the confiscated and/or stolen money of $60,297.68.

28.  Pine Ridge Reservation is not in or a part of the State of South Dakota.

29.     Before South Dakota could be admitted into the Union of States in 1889, it
     had to comply with the United States Enabling Act (Approved February 22,
     1889)[25 U.S. Statutes at Large, c 180 p 676].  In July of 1889, the State of
     South Dakota acquiesced to the Federal demand and ceded the Pine Ridge
     Reservation from belonging to boundaries of the State at its Constitutional
     Convention.  On Nov. 11, 1889, and subsequent the Constitutional Convention,

US President Benjamin Harrison issued the Proclamation admitting South Dakota into the Union.   Section 4, 2nd clause of the Enabling Act demanded:

> **"That the people inhabiting said proposed States do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United State, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States;** . . . , that no taxes shall be imposed by the States on lands or property therein belonging to or which may hereafter be purchased by the United States or reserved for its use. . . . (E)xcept such lands as have been or may be granted to any Indian or Indians under any act of Congress containing a provision exempting the lands thus granted from taxation; but said ordinances shall provide that all such lands shall be exempt from taxation by said States so long and to such extent as such act of Congress may prescribe.

The Constitutional Convention for the State of South Dakota in July of 1889 promulgated Article XXIII of its Constitution by declaring **"that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries"** of the State of South Dakota by the following ordination:

Sioux Falls, Dakota, July 16, 1889 .

Mr. President:

Your Committee on Amendments and Revision of the
Constitution to whom was referred Article XXIII of the Con-
stitution, beg leave to report that we have examined said article
and find no change necessary in order to make same conform
to the Enabling Act, and we therefore recommend that the same
be submitted as originally drawn.

Friday, July 19, 1889. 55

Be it Ordained by the Constitutional Convention of the State of
South Dakota-.

First: That perfect toleration of religious sentiment shall
be secured, and that no inhabitant of this State shall ever be mo-
lested in person or property on account of his or her mode of
religious worship.

Second: That the people inhabiting this State do agree
and **declare that they forever disclaim all right and title to the
unappropriated public lands lying within the boundaries thereof,**. . .
and the said Indian lands shall remain under the absolute jurisdiction
and control of the Congress of the United States; that the lands
belonging to citizens of the United States residing without
this State shall never be taxed . . . ; that no taxes shall be im-
posed by this State on lands or property therein belonging to,

56 Journal of the Convention,

or which may hereafter be purchased by the United States or
reserved for its use. (E)xcept such lands as have been or may be
granted to any Indian or Indians under any act of Congress containing
a provision exempting the lands thus granted from taxation but that
all such lands shall be exemptfrom taxation by this State so long and
to such extent as such act of Congress may prescribe.

    In conclusion, upon being allowed to be admitted to the Union, the State of South Dakota ceded the Pine Ridge Reservation from the confines of its boarders on November 1, 1889.

    In an United States Eighth circuit court of appeals decision, <u>Rosebud v State of Dakota</u>, 900 F.2d 1164 (1990) confirmed "absent tribal consent, state of South Dakota had no jurisdiction over highways running through Indian lands in the state." The Rosebud Sioux tribe was joined in this case by the Cheyenne River Sioux Tribe, the Oglala Sioux Tribe, and the Standing Rock Sioux Tribes (the Tribes). Federal reservations have refused to cede to the State of South Dakota any kind of jurisdiction over land and property (cattle) on Indian Country.

    "Since tribal consent was not given, (brand inspection) jurisdiction cannot be assumed." Ibid.

8

30. State of South Dakota Brand Board with its legislative laws, regulations, and policies do not have jurisdiction on or coming off the Pine Ridge Reservation.

31. The State of South Dakota brand inspection laws are not applicable to the eastern parts of South Dakota, Nebraska and the Pine Ridge Reservation.

32. If the Nebraska and South Dakota brand inspection laws and inter department regulations and/or policies are enforced on the areas named in paragraph 28, they violate several Constitutional rights not limited to "equal protection under the law," "full faith and credit clause," and "the dormant clause" (Article I, § 8).

33. South Dakota brand inspection laws, regulations and polices are specifically not applicable to the Pine Ridge Reservation.

34. On July 25th, 2017, the Plaintiff delivered 47 yearlings to be auctioned and sold by defendant Philip Livestock and Thor Roseth.

35. All 47 yearlings were branded with the Plaintiff's ledge able Bar Mill Iron brand.

36. The Bar Mill Iron brand proved ownership by the Plaintiff.

37. No other owner owns this brand or the cattle inspected on July 25th, 2017.

38. The yearlings were sold to buyer 1000-1 for $60,297.68.

39. On July 25th, 2017, defendant Jake Schofield conspired with Philip Livestock and Thor Roseth to confiscate and/or steal the Plaintiff's net receipt of $59,420.36 from the sale of the livestock to buyer 1000.

40. There was no probable cause to confiscate the money from the proceeds of the sale.

41. There was not a Constitutional probable cause warrant to seize the money.

42. On July 25th, 2017, Jake Schofield prepared a note under the guise of South Dakota Brand Board conspiring with Thor Roseth/Philip Livestock to confiscate and/or steal the Plaintiff's $59,420.36 funds from the sale of his livestock.

43. Thor Roseth was not given a Constitutional probable cause warrant to allow him to seize the money from the 47 head of livestock.

44. Thor Roseth/Philip Livestock are/is using the money without interest confiscated and/or stolen from the Plaintiff.

45. The Plaintiff owned the livestock and has not received the payment for the livestock.

46. It is unknown until after discovery how a kickback is received by Jake Schofield in exercising this note to Thor Roseth ordering the confiscation and/or stealing of the proceeds from the Plaintiff's sale of the livestock.

47. Thor Roseth and/or Philip Livestock Auction did not charge the South Dakota State Brand Board for the collection of brand fees or the rental of office facilities.

## CAUSES OF ACTIONS

### CAUSE NO. 1

48. The actions of the defendants stated in paragraphs 38, 39, 40, 41, & 42 violated the due process clause of the 5th Amendment of the Federal constitution, and Articles VI, § § 1, 2, and 11 of the South Dakota Constitution, when the defendants conspired to take $59,420.36 from the Plaintiff without due process.

### CAUSE NO. 2

49. The actions of the defendants stated in paragraphs 38 through 42 violated the taking clause of the 5th Amendment of the Federal Constitution, and Article VI § 11 of the South Dakota Constitution, when the defendants conspired to take $59,420.36 from the Plaintiff "private property without just compensation."

### CAUSE NO. 3

50. The actions of the defendants stated in paragraphs 40 through 42 violated the taking clause of the 4th Amendment of the Federal Constitution and Article VI § 11 of the South Dakota Constitution, when they seized the proceeds of the

livestock sale without a probable cause oath, affirmation, and/or a warrant obtained before a judicial officer.

## CAUSE NO. 4

Defendants Schofield and Roseth, and defendants 1X thru 4X conspired to violate the Plaintiff's Constitutional and Statutory rights (Title 42 USC §§ 1981 thru 1985). Especially see 1985(3) ("Conspiracy to interfere with civil rights – depriving persons of rights or privileges) and §1981(c) (impairment by **nongovernmental** (emphasis added) discrimination and impairment under color of State law when they stole/seized the Plaintiff's proceeds without a warrant to seize; "The Privileges or Immunities Clause (of the 14th Amendment) include those rights enumerated in the Constitution as well as some unenumerated rights." McDonald v City of Chicago, US Supreme Court, 2010, Lexis 5523.

## COUNT NO. 5

Defendants violated the "full faith and credit clause" of Article IV of the Federal Constitution. This means what is legal in one State is legal in another State. In South Dakota it is called the reciprocity statute. See 32-10-5.

## COUNT NO. 6

Defendants violated the common law crime of theft.

## REQUESTED RELIEF

1. CLASS ACTION: The Plaintiff and members of the Plaintiff's class are
   suffering irreparable injury and are threatened with continuing further injury by

reason of the acts complained of herein and have no other adequate remedy at law.

The Plaintiff demands on behalf of himself and all others similarly situated, that this Honorable Court agree with the Plaintiff that this action be maintained as a class action, i.e., a field brand inspector has no authority to issued his own personal warrant on his whim to seize property without due process and/or a warrant from a judicial officer.

2.  INJUNCTION: the Plaintiff requests the Court to grant the following equitable relief by an issue of an injunction pursuant to Rule 65 by ordering the defendant Schofield to:

A. Cease and desist from ever again taking property of the Plaintiff, and or similarly situated ranchers, without due process of law supported with a warrant under the Constitutional requirement of an oath or affirmation.

B. Cease and desist from ever again taking property of the Plaintiff, and or similarly situated ranchers, without due process of law.

That because the acts sought to be restrained is being committed by the named defendant(s) and is continuing this policy and constitutes immediate danger of irreparable harm, damage, and injury to the Plaintiffs' Constitutional rights, pending this Court's granting of a PERMANENT injunction, the

Plaintiff requests this Court GRANT a Preliminary Injunction to the same
effect.

3. DECLARATORY JUDGMENT: Declare the Defendants violated the
Petitioners rights as stated in the facts and causes of actions.

WHEREFORE PREMISES CONSIDERED, the Plaintiffs requests the
defendants be cited to appear and answer as required by law. The Plaintiff requests
a jury to judge the facts and actual monetary damages, the physical mental
damages, and punitive award against each individual defendant for breach of each
civil and constitutional right violation, including and not limited to:

1.  Mental suffering, pain, distress and anguish in the past;
2.  Mental suffering, pain, distress and anguish in the future;
3.  Reimbursement of the cost and time expended by the Plaintiff for actions
    unlawfully provoked by the defendants;
4.  Pre-judgment and post-judgment interest as provided by law: and
5.  Contingency enhancement premium of one third to one half of the award
    because of the high risk of litigation of civil rights grievances.
6.  Grant punitive damages against the Defendant(s) to the Plaintiff.

WHEREFORE, the defendants have acted shamefully and with a willful and
reckless disregard for the Constitutional right of an oath to obtain a warrant
before an impartial magistrate. Accordingly, punitive damages should be
awarded against the defendants to encourage them to uphold their oaths to uphold
the United States Constitution and its Laws.

Courts have held punitive damages play an important role in furthering the
stability of the Constitution. Awarding punitive damages directly advances the
public interest in preventing repeated Constitutional and civil right violations, and

provide the only significant remedy available where Constitutional rights are maliciously violated, but the victim can prove only marginal compensatory injuries.

The Plaintiff requests the jury to decide the exemplary damages and damages for the deprivation or theft of property and the following facts:

1.  The Defendant(s) took $59,420.36 from the Plaintiff without Due Process of Law;

2.  The defendant(s) seized $59,420.36 from the Plaintiff without due process of obtaining a probable cause warrant under oath before a judicial officer.

3.  The defendants committed the common law wrong of thieving $59,420.36.

4.  Defendants Schofield and Roseth, and defendants 1X thru 4X conspired to violate the Plaintiff's Constitutional and Statutory rights (Title 42 USC §§ 1981 thru 1985).  Especially see 1985(3) ("Conspiracy to interfere with civil rights – depriving persons of rights or privileges) and §1981(c) (impairment by **nongovernmental** (emphasis added) discrimination and impairment under color of State law when they stole/seized the Plaintiff's proceeds without a warrant to seize.

5.  Defendants violated the "full faith and credit clause" of Article IV of the Federal Constitution.  This means what is legal in one State is legal in another State or is legal coming from Pine Ridge Reservation.  In South Dakota it is called the reciprocity statute.  See 32-10-5.

Filed,

Rudy Stanko

HC 64 BOX 46
Oakland, South Dakota
57716

15